## Case No. 18,270.

CHARGE TO GRAND JURY—TREASON.

[4 Blatchf. 518; 1 23 Law Rep. 597.]

Circuit Court, S. D. New York. Jan. 14, 1861.

THE LAW OF TREASON.

1. The provision of the constitution of the United States in regard to treason, explained.

2. What acts constitute treason and misprision of treason, under the act of April 30, 1790 (1 Stat. 112), defined.

3. A mere conspiracy to subvert by force the government, is not treason.

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

4. The combination of a body of men, with the design of seizing, and the actual seizing, of the forts and other public property of the United States, is a levying of war against the United States, and is treason.

5. All persons engaged therein are by the law regarded as levying war against the United States; and all who adhere to them are to be regarded as enemies; and all who give them, in any part of the United States, aid and comfort, come within the provisions of the act of April 30, 1790, and are guilty of treason.

6. What amounts to adhering to the enemies of the United States and giving them aid and comfort, explained.

7. The extent of the jurisdiction of this court in regard to the offences of treason and misprision of treason, defined.

SMALLEY, District Judge (charging grand jury). The court has requested your attendance this morning, in order to call your attention to, and give you some instructions in relation to, crimes which have long been unknown in · our hitherto peaceful and happy country, which for more ·than fifty years the federal courts have not been called upon to investigate, and which are, therefore, very imperfectly understood in the community. Yet one of them is the highest crime known to the laws in any civilized country. It is that of high treason. Recent painful events make it the duty of the court to define to you what constitutes the offence, and also what constitutes the lesser crime of misprision of treason, that you may inquire whether either has been committed by any person or persons within the jurisdiction of this court, and, if you are satisfied that either has, that they may be presented to the court, to be dealt with according to law, and, also, that those who desire to be good and true citizens may be forewarned, and not ignorantly and unwittingly be led into the commission of any acts in violation of the laws of their country, and which would make them guilty of either of these offences. It is unnecessary at this time to enter into an elaborate disquisition on the law of treason. The constitution of the United States clearly defines in what it consists. The third section of the third article provides, that "treason against the United States shall consist only in levying war against them, or in adhering to their enemies, giving them aid and comfort." Again, the same section provides that "the congress shall have power to declare the punishment of treason."

In pursuance of the power thus conferred, congress passed an act, which was approved April 30, 1790 (1 Stat. 112), which provides, in section one, "that if any person or persons, owing allegiance to the United States of America, shall levy war against them, or shall adhere to their enemies, giving them aid and comfort, within the United States or elsewhere, and shall be thereof convicted, on confession in open court, or on the testimony of two witnesses to the same overt act of the treason whereof he or they shall stand indicted, such person or persons shall be adjudged guilty of treason against the United States, and shall suffer death." Section two provides, "that · if any person or persons, having knowledge of the commission of any of the treasons aforesaid, shall conceal, and not, as soon as may be, disclose and make known the same to the president of the United States, or some one of the judges thereof, or to the president or governor of a particular state, or some one of the judges or justices thereof, such person or persons, on conviction, shall be adjudged guilty of misprision of treason, and shall be imprisoned not exceeding seven years, and fined not exceeding one thousand dollars."

It is well known that war—civil war—exists in portions of the Union; and that persons owing allegiance to the United States have confederated together, and with arms, by force and intimidation, have prevented the execution of the constitutional acts of congress, have forcibly seized upon and hold a custom-house and post-office, forts, arsenals, vessels, and other property belonging to the United States, and have actually fired upon vessels bearing the United States flag and carrying United States troops. This is a usurpation of the authority of the federal government. It is high treason, by levying war. Either one of those acts will constitute high treason. There can be doubt of it. The fact that any or all engaged in the commission of these outrageous acts under the pretended authority of the legislature, or a convention of the people, of any state, or of the officers appointed thereby, or acting thereunder, does not change or affect the criminal character of the act. No man or body of men can throw off their allegiance to their government in that way. Nor can any state, or the people of any state, acting in any capacity whatever, absolve any person therefrom. Neither South Carolina nor any other state can authorize or legally protect citizens of the other states in waging war against their government, any more than can the queen of Great Britain or the emperor of France. If any such power is assumed it is without right, and the deluded individual who acts under it is none the less guilty of treason, and liable to be punished therefor.

That the slaveholding states have just cause of complaint against some of their sister states, is lamentably too true; and that the legislatures of several states have passed acts · which are in direct conflict with one of the plainest provisions of the constitution of the United States, which acts were intended to deprive the slaveholding states of rights expressly guaranteed to, and important to them, is well known. This is deeply to be regretted; and it is hoped and believed that the sober second thought of the people of those states will induce them to do justice to themselves, as well as to their Southern brethren, and evince their loyalty to the constitution and the Union by speedily wiping all such acts from their statute books. But the fact that some of the states have passed unconstitutional acts, can afford no justification for rebellion and civil war, or a breaking up of the federal Union, which was formed by the patriotism and wisdom, conciliation and compromise of our fathers, and in which our prosperity as a people has been unparalleled in the history of nations. Such legislative acts, however, are not laws. Being in violation of the constitution of the United States, they are mere nullities, and all who attempt to enforce them are themselves violators of the laws, and can be, and, in some instances have been, punished as such.

What overt acts, then, constitute treason? A mere conspiracy to subvert by force the government, however flagitious the crime may be, is not treason. To conspire to levy war, and actually to levy war, are distinct offences. If a body of people conspire and meditate an insurrection, to resist or oppose the laws of the United States by force, they are only guilty of a high misdemeanor; but, if they proceed to carry such intention into execution by force, they are guilty of treason by levying war. In the language of Chief Justice Marshall, in Ex parte Bollman, 4 Cranch [8 U. S.] 75, 126: "It is not the intention of the court to say that no individual can be guilty of this crime who has not appeared in arms against his country. On the contrary, if war be actually levied, that is, if a body of men be actually assembled for the purpose of effecting by force a treasonable purpose, all those who perform any part, however minute, or however remote from the scene of action, and who are actually leagued in the general conspiracy, are to be considered as traitors."

As the court has already said to you, the combination and assemblage of a body of men,

with the design of seizing, and the actual seizing, of the forts and other public property in and near Charleston, South Carolina, and some other states, is a levying of war against the United States. Consequently, any and every person who engages therein is by the law regarded as levying war against the United States; and all who adhere to them are to be regarded as enemies; and all who give them aid and comfort, in South Carolina or New York, or in any other portion of the United States, or elsewhere, come within the express provisions of the first section of the act of April 30, 1790, and are guilty of treason.

What amounts to adhering to, and giving aid and comfort to· our enemies, it is somewhat difficult in all cases to define; but certain it is, that furnishing them with arms or· munitions of war, vessels or other means of· transportation, or any materials which will aid the traitors in carrying out their traitorous purposes, with a knowledge that they are intended for such purposes, or inciting and encouraging others to engage in or aid the traitors in any way, does come within the provisions of the act. And it is immaterial whether such acts are induced by sympathy with the rebellion, hostility to the government, or a desire for gain.·

Under the second section of the act of 1790, all who have any knowledge of any such acts of treason, and do not as soon as possible make it known, in the manner therein prescribed, are guilty of misprision of treason, and subject to the punishment therefor. Your inquiries must be confined to offences committed within the jurisdiction of this court, that is, within the Southern district of New York, and upon the high seas. Although there may be a question whether the jurisdiction of the court, in such cases, is not ·more extended, you will for the present confine your investigations to the limits prescribed. Within this limit it is your right and your duty to inquire whether any person or persons have been, according to the principles of law laid down by the court, guilty of treason or misprision of treason, and, if you are satisfied that either of these offences has been committed, to faithfully and fearlessly present the offenders, that they may be punished. It is the duty, and it will unquestionably be the desire, of all good and true citizens, to do, in their respective spheres, everything in their power to suppress rebellion, expose treason, and bring traitors to justice.

[Inquiries having been made by the jury in reference to their duties, the court made the following observations: When the grand jury retired, the other day, one of the members of your body submitted on paper, certain questions to the court, which I shall now proceed to answer: "First. Whether it is the duty of the grand jury to inquire into violations of the law which may be incidentally brought to their knowledge, and which have not been presented by the district attorney, and which he had no knowledge of." In reply to that, · the court would say, gentlemen, that you are not necessarily confined to offences to which your attention may be called by the prosecuting officer. If any one of you have reason to believe that any of the laws of the federal government have been violated, you are at liberty to inquire into the matter, whether or not your attention has been called to it by the district attorney. Unquestionably you have a right to make the investigation. The second inquiry is: "Whether it is expected of the jury to examine into the detention of felons and witnesses, as to their safety, treatment, and comfort, and as to whether any persons are kept an unwarrantable time before trial." The third inquiry is: "Whether it is expected that the grand jury would present such defects in

the practice in the custom-house as render it easy for the clearance of vessels for the slave trade." With respect to that, gentlemen, it may be well to consider, for a moment, what is the jurisdiction of the federal courts. First, then, they can only inquire into violations of· the federal laws. The federal courts have no common-law criminal jurisdiction, and they therefore have no jurisdiction over offences that are not created by the constitution, or some act of congress under the constitution. I understand that, in many of the states, it is by express statute made the duty of grand juries to inquire into matters referred to in the second and third interrogatories submitted to the court. English grand juries have also frequently inquired into such matters, and made presentment thereof to the court, and probably it is a part of the common law that they should do so; but the court is not aware of any act of congress, nor of any practice in the federal courts, which renders it your duty to make any of the investigations contemplated by either of these questions. The court does not intend to say that you may not make such examinations and inquiries, only that they are outside of your judicial duties, and, if you make report to the court, it has no power to act, and can do nothing more than to order it filed with its records. Such investigations, therefore, cannot be regarded as a part of the official duties of grand juries in the federal courts. You are at liberty now to retire, gentlemen, and proceed with the business before you.] [2]